FRED W. JONES, Jr., Judge.
Plaintiff sued for damages resulting from injuries allegedly sustained in a motor vehicle accident. Judgment was rendered in his favor, based upon a jury verdict, for $8,000. Plaintiff appeals that judgment, asserting that (1) the award was grossly inadequate and (2) the trial judge’s improper jury selection procedure entitled plaintiff to a new trial.[1]
*378 The facts of the accident which precipitated this litigation were undisputed and liability of defendants to plaintiff for his damages was admitted in their attorney’s opening statement to the jury.
On August 3,1978, plaintiff (a 56 year old male resident of California) was driving his car north on Louisiana Highway 1 in Caddo Parish in the vicinity of LSU-Shreveport. As he approached the intersection of Highway 1 and Millicent Way, plaintiff stopped his vehicle in obedience to a red traffic signal light, whereupon his automobile was struck from the rear by a Salley Grocery Company truck with such force that plaintiff’s car was demolished.
Immediately after the accident plaintiff and the other occupants of his automobile were taken by ambulance to the emergency room of the Physicians and Surgeons Hospital in Shreveport. Plaintiff was examined by the emergency room physician and his lacerated scalp was sutured. At the time plaintiff’s blood pressure registered 200/100. He was also diagnosed as having suffered acute cervical and lumbosacral sprains. Medication was prescribed and plaintiff was supplied with a soft cervical collar. He was not hospitalized.
Three days after the accident plaintiff returned by airplane to his home in Los Angeles, California. On August 7, 1978 plaintiff was examined by Dr. Close, an orthopedic surgeon, who diagnosed his patient’s injuries as a severe sprain of the cervical spine, a severe sprain of the lumbo-sacral spine and a sprain of the left shoulder. Dr. Close prescribed medication for the relief of pain and fitted plaintiff with a more comfortable cervical collar. During the ensuing months plaintiff continued under Dr. Close’s care and treatment, consisting in part of a regimen of physical therapy and intermittent wearing of a back brace.
Dr. Close (who testified by video taped deposition taken on December 11, 1981) stated that he treated plaintiff on a regular basis for his accident-related neck and back problems for over three years. Total charges for this period of extended medical treatment amounted to $2,225, as evidenced by a detailed statement. Dr. Close last examined plaintiff on December 1,1981 and found that his patient continued to have limited motion in his neck and back, with headaches frequently accompanying the cervical discomfort. It was Dr. Close’s opinion that, because of his injuries, plaintiff was disabled to perform strenuous physical work or to engage in activity which required standing for long periods of time.
Upon returning to California plaintiff also resumed his visits to Dr. Chinn, a practitioner of internal medicine, who had been treating the obese plaintiff for hypertension prior to the accident. Dr. Chinn examined plaintiff on August 11,1978 and found that his blood pressure was somewhat elevated— with a reading of 170/100. Dr. Chinn (who also testified by video taped deposition taken on December 10,1981) stated that plaintiff’s hypertension was aggravated by the accident and that increasingly strong medication was required to control this problem. It was his opinion that, because of the hypertension, plaintiff was disabled to return to his employment with the government postal services.
At the trial on the merits held in April 1982, plaintiff testified that he continued to experience discomfort in the cervical region, having to wear a cervical collar at night, and that his back caused him problems every morning, necessitating the wearing of a back brace three times a week.
At the conclusion of the trial, the jury made an in globo award to plaintiff of $8,000. Obviously, we do not have the benefit of a trial court’s written reasons for judgment in this case and are left to speculate as to which of plaintiff’s claimed ailments were deemed by the jury to be accident-related. Further, the jury did not answer interrogatories or otherwise specify what portion of the $8,000 was for special damages and what portion for general damages. However, the simple fact of the award evidences the jury’s conclusion that *379 plaintiff was injured to some extent in the accident.
Be that as it may, it is established in the record through the report from the Physicians and Surgeons Hospital and from the testimony of Dr. Close that plaintiff sustained a severe cervical sprain and a severe lumbosacral sprain as a result of the accident. Defendants offered no evidence that in any way contradicted the existence of these orthopedic injuries. If the jury disregarded the proof of these injuries, it was manifestly wrong in so doing.
On the other hand, plaintiff’s assertion that he is disabled by hypertension (aggravated by the accident) is highly questionable. Dr. Ciraulo, California cardiologist to whom Dr. Chinn referred plaintiff, stated that plaintiff’s hypertension could be controlled with proper medication. Dr. Han-ley, Shreveport cardiologist who reviewed plaintiff’s medical records, did not believe plaintiff was receiving proper medication for his blood pressure problem. Consequently, if the jury failed to find that plaintiff’s hypertension was aggravated in any significant way by the accident, it was not clearly wrong.
Having concluded plaintiff proved his orthopedic injuries were attributable to the accident, we find that he is entitled to recovery of the following medical expenses:
Physicians & Surgeons Hospital $ 447.80
Dr. Close 2,225.00
Freeman Hospital (therapy) 708.00
California Orthopedic Co. (cervical collar) 34.98
Total $ 3,415.78
The jury apparently determined that plaintiff proved no loss of wages because of his orthopedic injuries, and was not manifestly wrong in this finding. Prior to the accident plaintiff was employed by the U.S. Postal Service as a Vehicle Dispatching Foreman. This position entailed the supervision and coordination of all local dispatching activities of postal vehicles on both scheduled and nonscheduled runs to assure the efficient and timely movement of the mails.
Dr. Close testified that plaintiff’s orthopedic injuries disabled him from performing outdoor work as a mailman together with any strenuous indoor labor. However, there is no evidence in the record that plaintiff’s supervisory position required work of this nature.
It is undisputed that plaintiff did not return to his postal employment after the accident. However, he indicated that this decision was made on the recommendation of Dr. Chinn rather than because of his neck and back ailments. Further, Dr. Vil-kin, a California psychiatrist who examined plaintiff on March 3,1979 at the request of Dr. Chinn, reported.
“Mr. Slaughter stated that the real reason that he wanted to see me was to retire from his position at the post office rather than to obtain treatment for his symptoms and to return to work.”
For these reasons, the record supports a jury finding (which we assume) that plaintiff is not entitled to recover special damages for loss of past wages or for impaired future earning capacity.
Deduction of the $3,415.78 special damages, to which plaintiff is entitled, from the jury award of $8,000 leaves a balance of $4,584.12 as his general damage award. Plaintiff contends that this represents an abuse of discretion by the jury.
In appellate review of damage awards, we are permitted to disturb a trial court award only if the record clearly reveals an abuse of discretion by that tribunal in making its award. Upon this finding, we may only modify the award to the extent of raising it (or lowering it) to the lowest (or highest) point which is reasonably within the discretion afforded the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979).
Our review of this record leads us to the conclusion that an award of $4,584.12 in general damages to one who suffered an acute cervical sprain and an acute lumbo-sacral sprain, with the attendant pain and discomfort for several years after the accident, constitutes an abuse of the jury’s discretion.
Because of certain inconsistencies in plaintiff’s testimony and his demonstrated *380 propensity for exaggerating the gravity of his claimed physical ailments, the jury could well have expressed its disapproval and disdain by unduly minimizing the seriousness of the proven accident-related orthopedic injuries. As previously noted, we simply have to resort to speculation in this area. Regardless of the jury’s motivation, our mandate is to correct a clear abuse of trial court discretion.
Under the circumstances of this case, an award of $10,000 is the lowest reasonable amount for general damages that could be appropriately made. Compare Martin v. McHann, 404 So.2d 1297 (La.App. 2d Cir.1981); Oubre v. Fireman’s Fund, 402 So.2d 220 (La.App. 1st Cir.1981); Joubert v. Texas Industries, 401 So.2d 571 (La.App. 3rd Cir.1981); Divincenti -v. Des-forges, 372 So.2d 606 (La.App. 4th Cir.1979).
This disposition of the appeal pretermits the necessity of discussing plaintiff’s complaint that the trial judge erred in his jury selection procedure.
For the reasons explained, the judgment of the district court is amended to increase the award in favor of plaintiff to $13,415.78, together with legal interest thereon from date of judicial demand until paid and, as amended, is affirmed. Cost of appeal is assessed to the appellees.

. Plaintiff complains that, rather than alternating peremptory challenges between the parties, the trial judge compelled plaintiff to exercise all of his peremptory challenges to the panel be *378 fore tendering it to defendants for the exercise of their challenges.